**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 14, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: FWLL, Inc. | ) | Case No. 15-52071-CAG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| RANDOLPH N. OSHEROW, | ) | |
| Chapter 7 Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 16-05023 |
| TEXAS SILICA LOGISTICS JOINT | ) | |
| VENTURE, ZSV, LLC POTH ANDREW | ) | |
| MCSTAY, AND DAVID ZEHR, M.D. | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART, DENYING IN PART, TRUSTEE'S MOTION FOR
AWARD OF ATTORNEYS' FEES**

Came on to be considered the above-numbered adversary proceeding and, in particular, Trustee Randolph N. Osherow's Motion for Award of Attorneys' Fees (ECF. No. 158) ("Motion"), Defendant Dr. David Zehr's Objection to the Trustee's Motion for Award of Attorneys' Fees ("Objection") (ECF No. 171), and Trustee's Reply in Support of Motion for Award of Attorneys'

1

Fees and Costs ("Reply")(ECF No. 173).[1] The Court took this matter under advisement without holding a hearing on the Motion. For the reasons stated herein, the Court finds that Trustee's Motion should be **GRANTED IN PART**, and **DENIED IN PART**.

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. The parties have consented to this Court's authority to issue a final order. (ECF Nos. 12 and 13); *see also* ***Wellness Int'l Network, Ltd. v. Sharif (In re Sharif)***, 135 S. Ct. 1932, 1948 (2015) (finding that where the parties consent to a bankruptcy court issuing a final order confers constitutional authority on the court). This Court has jurisdiction to enter a final order with regard to matters presently under submission pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and (b), and the Standing Order of Reference of Bankruptcy Matters entered by the United States District Court for the Western District of Texas. This Order constitutes the Court's written findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

Trustee initiated this adversary proceeding by filing his Original Complaint on March 31, 2016 (ECF No. 1). Trustee's Complaint sought recovery under 11 U.S.C. § 547 (preferential transfers), 11 U.S.C. §548 (fraudulent transfers), and attorney's fees and costs. Trustee amended his Complaint on November 28, 2016, and added claims for relief under 11 U.S.C. § 544 (incorporating a cause of action under Tex. Bus. & Comm. Code Ann. § 24 (West 2018))[2],

---

[1] "ECF" denotes the electronic case filing in Adversary No. 16-05023.
[2] Referred to as the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Comm. Code Ann. § 24.001 *et seq*.

additional claims under §§ 547 and 548[3], and piercing the corporate veil pursuant to Tex. Bus. Orgs. Code Ann. § 21.223 (West 2018). (ECF No. 136 ). All Defendants timely answered.

Prior to this matter going to trial, both parties filed motions for summary judgment. Trustee filed his Motion for Partial Summary Judgment on Count I: Avoidance of a Fraudulent Transfer to Defendant David Zehr, M.D. ("Zehr"). Pursuant to 11 U.S.C. § 548. (ECF No. 42). Defendant Zehr filed his Response in opposition on April 17, 2017. (ECF No. 51). The Court denied Plaintiff's Motion for Partial Summary Judgment, reading its ruling into the record on June 5, 2017.[4] The Court did, however, make two determinations under § 548(a)(1) that applied to the Trustee's claims for relief. The Court determined that:

> The Trustee's summary judgment evidence shows the $2,518,394.09 transferred to Zehr was FWLL's property. Specifically, the $2,518,394.09 was FWLL's proceeds from the Buffalo Proppants Settlement Agreement. Further, the Trustee's summary judgment evidence shows that FWLL was the only plaintiff in the Buffalo Proppants Litigation. Thus, FWLL was the only party that settled any claims against Buffalo Proppants and/or INVX Global pursuant to the Buffalo Proppants Settlement Agreement, and under the terms of that agreement, FWLL was the only party entitled to receive payment of the $2,518,394.09. The Trustee's summary evidence shows that the $2,518,394.09 was placed in the IOLTA trust account of FWLL's attorneys PCPBJ, which represented FWLL and only FWLL, in connection with the Buffalo Proppants Litigation, the Buffalo Proppants Settlement Agreement, and made the transfer to Zehr by check in Zehr's name only.
>
> FWLL filed its bankruptcy petition on August 27, 2015 ("Petition Date"), and the transfer of the $2,518,394.09 to Zehr was made on or about July 8, 2015, fifty-one (51) days (and less than two years) before the Petition Date. *See* 11 U.S.C. § 548(a)(1). As such, the transfer occurred within two years of the petition date.

Defendant Zehr filed his Motion for Summary Judgment arguing that Trustee cannot avoid the settlement sum because he never sought to avoid the underlying settlement; that Zehr took the settlement funds in good faith for value under § 548(c); that Trustee cannot avoid the settlement

---

[3] All references are to 11 U.S.C. § 101 *et seq.* unless specifically noted.
[4] The transcript of the Court's ruling is at ECF No. 96.

3

sum pursuant to § 544 and TUFTA because Zehr took it in good faith and for value; and that Zehr had defenses under §550 because he was not the initial transferee as to the settlement funds.

Trustee filed his Response in opposition to the Zehr Motion for Summary Judgment. (ECF No. 49). The Court denied Zehr's Motion for Summary Judgment and read its ruling into the record on June 5, 2017. *See* ECF No. 96 (transcript of the ruling). Although the Court denied Zehr's Motion for Summary Judgment, the Court held that the Trustee's summary judgment evidence showed that Zehr was the initial transferee, and therefore, he is strictly liable for the $2,518,394.09 transfer should the Court find that the transfer was fraudulent.

The adversary proceeding was tried on September 11 and 12, 2017, and November 8 and 9, 2017. Zehr filed his Motion for Judgment pursuant to Fed. R. Civ. P. 52(c) during the trial seeking a take nothing judgment on Trustee's Counts I, II, and VIII.[5] The Court deferred ruling on the Motion until conclusion of trial. After trial, the Defendants moved for a take nothing judgment under Rule 52(c) as to whether the Trustee had proved: (a) an actual and/or constructively fraudulent transfer pursuant to §548 (Count I); (b) an actual and/or constructively fraudulent transfer pursuant to § 544 and TUFTA (Count II); and piercing ZSV LLC's ("ZSV") corporate veil to hold the LLC members, including Zher, individually liable (Count VIII). After trial, the Court took the matter under advisement.

The Court issued its Memorandum Opinion Denying Dr. David Zehr's Motion for Judgment (ECF. No. 149) on April 5, 2018. The Court found that Plaintiff proved by a preponderance of the evidence under Count I of the Amended Complaint the avoidance of a transfer to Zehr individually in the amount of $2,518,394.09 and Count II of the Amended

---

[5] Defendants' counsel for Texas Silica Logistics Joint Venture ("TSL"), ZSV, LLC, and Poth Andrew McStay orally joined in Zehr's Motion for Judgment during trial. (ECF No. 137, p. 218).

Complaint for the avoidance of a fraudulent transfer to Zehr in the amount of $2,518,394.09 for a fraudulent transfer under § 544 and TUFTA. The Court also found that Plaintiff may seek his attorney's fees and costs as allowed under Fed. R. Civ. P. 7054 and Local Rule 7054. The Court also issued its Order (ECF No. 150) and Judgment (ECF No. 151) in conformity with its Memorandum Opinion.[6]

## PARTIES' CONTENTIONS

The Court notes that judgment was rendered against Zehr alone and that the other Defendants were not found liable to Trustee for his claims for relief. As such, at issue is how the Court should allocate Trustee's attorneys' fees against Zehr where some of the fees could have been allocated to matters regarding the non-liable Defendants.

Trustee notes that when attorneys' fees are incurred on claims for which they are recoverable (*e.g.*, the Trustee's TUFTA Claim in Count II) and claims for which they are not (*e.g.*, the Trustee's claim under § 547 of the Bankruptcy Code), the party must segregate its fees and can be awarded only those fees that relate to the compensable claim. *See* **In re Arnette**, 09-38643-BJH-7, 2011 WL 3651294, at *2 (Bankr. N.D. Tex. Aug. 18, 2011) (citing **Tony Gullo Motors I, L.P. v. Chapa**, 212 S.W.3d 299, 310–11 (Tex.2006)).

Trustee suggests that in lieu of providing finely parsed time entries that segregate time, the party's attorney may provide testimony concerning the percentage of time that was spent on compensable claims. *See id*. (quoting **RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.**, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.); *see also* **In re Frazin**, 02-32351-BJH-13, 2017 WL 7050632, at *39 (Bankr. N.D. Tex. Dec. 22, 2017) (attorney may provide

---

[6] The Court issued its Amended Final Judgment (ECF No. 190) on July 26, 2018, finding that Plaintiff was entitled pre- and post-judgment interest and relief under § 550(a).

5

evidence of proportionate split in lieu of segregated time entries); *Navigant Consulting, Inc. v. Wilkinson,* 3:02-CV-2186-B, 2006 WL 2437882, at *2 (N.D. Tex. Aug. 22, 2006) (employing proportionate reduction in fees where segregation was not possible); *Tony Gullo Motors I*, 212 S.W.3d at 314 (evidence of proper proportional split is permissible). Trustee maintains that, where work performed in connection with claims for which fees are not recoverable was "inextricably intertwined" with or advanced claims for which fees are recoverable, the fees do not have to be segregated.

Based on the Motion, the Affidavit of Natalie Wilson ("Wilson Affidavit") and the time records attached thereto, the Trustee requests an award of $486,517.50 in attorneys' fees and $106,039.25 in costs, through the date of the Judgment and additional award attorneys' fees of $25,000 if Zehr unsuccessfully appeals the Judgment to the United States District Court and an award of attorneys' fees of $25,000 if Zehr unsuccessfully appeals to the Court of Appeals for the Fifth Circuit.

Trustee's counsel states that segregation of its time records is not necessary or appropriate in this case. Nonetheless, in the event that the Court believes the attorneys' fee award should be reduced to reflect an appropriate division between work on claims for which fees are recoverable and those for which fees are not recoverable, Trustee submits that an overall reduction of 20% of the fees will properly account for the non-recoverable work. *See, e.g.*, *In re Frazin*, 2017 WL 7050632, at *39 (attorney may provide evidence of proportionate split in lieu of segregated time entries); *Navigant Consulting, Inc.,* 2006 WL 2437882, at *2 (employing proportionate reduction in fees where segregation was not possible); *Tony Gullo Motors I*, 212 S.W.3d at 314 (evidence of proper proportional split is permissible).

6

Zehr contends that "[i]n order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). When there are multiple defendants, the fees must further be segregated so that defendants are "not charged fees for which they are not responsible." *Id*. The party seeking recovery of attorney's fees always has the burden of proof to show that the fees were incurred against the particular defendant sought to be charged. *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 336 (Tex. App.—Texarkana 1999, no pet.). A party requesting attorneys' fees carries the burden of proof and the duty to segregate fees. *Merritt Hawkins & Assoc., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017).

Zehr maintains that when a plaintiff seeks attorneys' fees in a case involving multiple claims, at least one of which supports a fee award and at least one of which does not, the plaintiff must offer evidence segregating the hours worked between these claims. *Tow v. Speer*, CV H-11-3700, 2015 WL 12765414, at *6 (S.D. Tex. Aug. 17, 2015) ("When a plaintiff seeks attorneys' fees in a case involving multiple claims, at least one of which supports a fee award and at least one of which does not, the plaintiff must offer evidence segregating the hours worked between these claims." (first citing *Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 298 (5th Cir. 2007); and then quoting *Tony Gullo Motors I,* 212 S.W.3d at 310–14)). Moreover, the party seeking to invoke this exception to the duty to segregate has the burden of demonstrating that it applies. *Tow*, 2015 WL 12765414, at *6.

Texas law specifically requires that that "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I*, 212 S.W.3d at 313–14; *see also Wilkinson,* 508 F.3d at 298

7

(remanding to consider whether fees were properly segregated and noting, "[T]he question under *Chapa* is whether discrete legal services advance both a recoverable and unrecoverable claim."). When imposing liability for fees against all defendants leads to inequitable results, it is reversible. ***Nash v. Chandler***, 848 F.2d 567, 574 (5th Cir. 1988) (finding the application of joint liability for fees inequitable and remanding the matter to determine the appropriate division of fees).

Here, Zehr argues that not only did Plaintiff fail to segregate fees between his claims, but Plaintiff also failed to segregate fees between fees billed to each of the four defendants. *See* ECF No. 158. Zehr argues that Plaintiff cannot recover attorneys' fees for his claims for a preference under § 547(b) because he did not prevail on his claims for a preference. *See* ECF. No. 151. Moreover, the Court did not enter a judgment against TSL, ZSV or Mr. McStay. *Id.* Regardless, Plaintiff now seeks to recover the entirety of his attorneys' fees, against all four of the defendants Plaintiff sued, solely against Zehr. *See* ECF No. 158. Zehr maintains that it would be inequitable to hold Zehr responsible for the fees incurred in Plaintiff's claims and defenses against the other three defendants, as well as for fees incurred pursuing unrecoverable claims. Zehr therefore objects to these unsegregated fees which total $55,831.92.

Zehr also argues that the Trustee did not exercise proper billing judgment; that the Trustee's bills are vague; that the Trustee inappropriately billed for interoffice conferences and duplicate work; and that the Trustee should not recover fees for unsuccessful actions. Zehr's counsel attached a comprehensive chart in which counsel detailed by category (vague, duplicate billing or interoffice conference, or excessive billing or work that could have been performed by a paralegal) why a particular time entry for fees should be disallowed.

### APPLICABLE RULES FOR ATTORNEY FEES

Fed. R. Bankr. P. 7054(b)(2) provides:

8

(2) Attorney's Fees.
    (A) Rule 54(d)(2)(A)-(C) and (E) F.R.Civ.P. applies in adversary proceedings except for the reference in Rule 54(d)(2)(C) to Rule 78.
    (B) By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings.

Moreover, Local Rule 7054(a)(1)–(3) states:

(a) Claims for Attorney's Fees.

(1) All motions for an award of attorney's fees shall be filed and served no later than 14 days after entry of judgment pursuant to FRCP 54. Unless the substantive law requires a claim for attorney's fees and related nontaxable expenses to be proved at trial as an element of damages to be determined by a jury, a claim for fees shall be made by motion not later than 14 days after entry of judgment and pursuant to the following provisions. Counsel for the parties shall meet and confer for the purpose of resolving all disputed issues relating to attorney's fees before making application. The application shall certify that such a conference has occurred. If no agreement is reached, the applicant shall certify the specific reason(s) why the matter could not be resolved by agreement. The motion shall include a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project, as well as an affidavit certifying (1) that the hours expended were actually expended on the topics stated, and (2) that the hours expended and rate claimed were reasonable. Such application shall also be accompanied by a brief memo explaining how the fees were computed, with sufficient citation of authority to permit the reviewing court the opportunity to determine whether such computation is correct. The request shall include reference to the statutory authorization or other authority for the request. Detailed time sheets for each attorney for whom fees are claimed may be required to be submitted upon further order of the Court.

(2) An objection to any motion for attorney's fees shall be filed on or before 14 days after the date of filing of the motion. If there is no timely objection, the Court may grant the motion as unopposed.

(3) The motion shall be resolved without further hearing, unless an evidentiary hearing is requested, reasons therefore presented, and good cause shown, whereupon hearing on the motion may be granted.

## AWARD OF FEES UNDER TUFTA

Under TUFTA, the Court may award the Trustee his reasonable and necessary attorneys' fees and costs. ***In re Ritz***, 567 B.R. 715, 771 (Bankr. S.D. Tex. 2017) (citations omitted); *see also*

Tex. Bus. Comm. Code Ann. § 24.013 ("In any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just.").

Texas courts employ the following factors in approving fees under TUFTA:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

***Arthur Andersen & Co. v. Perry Equip. Corp.***, 945 S.W.2d 812, 818 (Tex. 1997) (citations omitted). These factors are similar to the considerations set forth in ***Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)***, 544 F.2d 1291, 1298–99 (5th Cir. 1977) which are often applied to requests for attorneys' fees in this Court.

The Court must first decide whether the Trustee's counsel fees are so intertwined that the fees associated with the claims that Trustee prevailed upon and those claims that the Trustee did not are inextricably related to the same facts and law. Before analyzing whether segregation of fees is required, the Court must examine the facts surrounding the litigation in this case and the procedural history of the case. The factual and procedural history is taken from the Court's Memorandum Opinion in the adversary proceeding (ECF No. 149).

FWLL's business was to buy, sell, transload, and store frac sand from the mine to the rig site, for drilling oil and gas wells. FWLL's primary customers were drilling companies, including Halliburton, Lewis Energy, C&J, and others. FWLL's financial problems began at its inception. FWLL opened its doors on May 5, 2014, and by June 2014, it had forty-seven (47) customers and about $45–50 million in open purchase orders, which it could not fill. FWLL also started seeking money from additional individual investors who—through seven joint ventures or partnerships with FWLL—invested millions of dollars. The joint ventures had no operational control over FWLL's frac sand business, nor did the joint ventures own the sand until it was sold. On or about April 29, 2014—about six days before FWLL opened it doors—FWLL and ZSV entered into a joint venture called Texas Silica Logistics Joint Venture ("TSL"), which was the first joint venture FWLL formed.

FWLL was the Manager of TSL and owned 45%, and ZSV owned 55%. ZSV was a Texas limited liability company, created to form TSL with FWLL. ZSV provided the money for TSL, and TSL used the money to purchase sand. At all relevant times, Zehr was the majority owner of ZSV. ZSV's minority owners were McStay and Leatherman, who is not a party to this adversary proceeding. McStay was the authorized managing member of ZSV.

FFWL had financial difficulty and lacked investor funds to continue its business. Further, FFWL had to sue a third party to collect on deposited funds that would have been otherwise used to purchase frac sand related to the TSL joint venture. When the purchase failed FWLL, TSL, ZSV, Zehr, McStay, and Leatherman entered into a Settlement and Mutual Release Agreement ("TSL Settlement"), pursuant to which FWLL: (a) assigned its right, title, and interest in TSL to ZSV; (b) agreed to pay ZSV $2,518,394.09 as consideration for the settlement("Settlement Sum"); and (c) agreed to pay ZSV the additional $300,000 due from INVX (an escrow entity) on July 3,

11

2015, or if the money was not received by July 3, 2015, to assign to ZSV FWLL's rights under the Agreed Judgment. The parties also agreed to dissolve TSL and parties granted mutual releases, but in this adversary proceeding, Zehr has admitted that FWLL did not owe any debt to him personally, and that he had no claims against FWLL to release.

On or about July 8, 2015, FWLL's counsel issued a check from its IOLTA account for $2,518,394.09, made payable to the order of David Zehr. Zehr was the only payee named on that check, and he used the $2,518,394.09 to pay off his personal lines of credit at Independent Bank.

On August 27, 2015, FWLL filed a voluntary petition under chapter 11 of the Bankruptcy Code, *In re FWLL, LLC*, Case No. 15-52071-cag ("Bankruptcy Case"). On October 9, 2015, creditor 2040 Babcock, Ltd. filed a motion to convert FWLL's Chapter 11 case to Chapter 7. On November 4, 2015, the Court entered an order converting FWLL's case to Chapter 7, and Randolph N. Osherow was appointed Chapter 7 trustee. Trustee initiated this adversary proceeding to collect on the fraudulent transfer to Zehr.

As noted herein, this adversary proceeding involved two motions for summary judgment, discovery disputes, a four day trial, and post-trial motions. After presiding over all of these matters, the Court finds that Dr. Zehr was the focus of the litigation in this adversary proceeding. This finding is premised on the fact that Dr. Zehr was the initial transferee on the fraudulent transfer and his involvement in the transfer was the primary factor in Trustee's case. The Court cannot conceive how most, if not all, of Trustee's case could have been prosecuted without developing the facts surrounding TSL and its relationship with FFWL. The Court agrees with Trustee that Trustee had the burden of proving fact-intensive elements and refuting complicated legal defenses and arguments raised by Zehr. The Court acknowledges that Zehr himself asserted essentially no knowledge of the relevant facts and claimed to be in possession of virtually no

12

discoverable documents; and McStay was Zehr's agent and McStay's knowledge (including knowledge of the Debtor's insolvency and actual fraudulent intent at the time of the transfer) was imputed to Zehr. In sum, the Court cannot discern how Trustee could have met his burden without developing his case with the other Defendants.

The parties cite a number of decisions that discuss whether a prevailing party must segregate its attorney's fees by recoverable and non-recoverable claims for relief, and by defendants that are found liable for the recoverable claims for relief. Both parties cite to the Texas Supreme Court's decision in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2007). In *Tony Gullo Motors I* the Texas Supreme Court noted that "[a]bsent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees. As a result, fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Id*. at 311. (footnotes omitted). Further, the Texas Supreme Court explained:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied). Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "interwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Gill Sav. Ass'n v. Chair King, Inc.,* 783 S.W.2d 674, 680 (Tex.App.-Houston [14th Dist.] 1989), *modified,* 797 S.W.2d 31 (Tex.1990) (remanded to the trial court for reexamination of attorney's fee award).

*Id*. (footnote omitted). The Texas Supreme Court noted that the exception to the duty to segregate fees is difficult to apply consistently. *Id*. at 312. The *Tony Gullo Motors I* court found that appellate courts have focused on the underlying facts, elements to a claim that must be proven, or a combination of the two. *Id*. (citations omitted). Some courts require

13

testimony on how the claims are intertwined, other do not. *Id*. (citations omitted). The Texas Supreme Court court recognized the potential inconsistency in the lower courts' approaches. As such, the Texas Supreme Court

> reaffirm[ed] the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. [I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.

*Id.* at 313–314.

The Fifth Circuit followed *Tony Gullo Motors I* in *Merritt Hawkins & Assoc., L.L.C. v. Gresham*, 861 F.3d 143 (5th Cir. 2017). *Gresham* involved an employment contract dispute in which there were multiple claims, including requests for both injunctive and monetary relief. *Id.* at 148. The Fifth Circuit found that the proper test for determining whether fees should be segregated between recoverable and non-recoverable claims is where the claims are so intertwined factually and advance both recoverable and unrecoverable claims that they need not be separated. *Gresham*, 861 F.3d at 156 (citing *Tony Gullo Motors I*, 212 S.W.3d at 313–14). The Fifth Circuit held that the party requesting the fees carries the burden of proof and the duty to segregate. *Id.* (citing *U.S. for Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998)).

Trustee's Reply states that Trustee's counsel has removed fees attributable to claims for relief that Trustee did not prevail.[7] Trustee's counsel states that "Trustee has already removed all time entries relating *solely* to Counts V, VI, and VII (which asserted preferential transfers and alter ego theories) and other defendants" and the remaining counts premised on the same legal and factual basis." (ECF No. 173, p. 5). Trustee argues that the claims for relief in Counts I–IV of the

---

[7] In addition, Trustee's counsel had erroneously included roughly $89,000 of fees and has reduced the amount of attorneys' fees requested by that amount. (ECF No. 173, pp. 1–2).

14

Amended Complaint are inextricably intertwined because the claims involve allegations of fraudulent transfers under bankruptcy and state law in which the same factual and legal analysis applies. Trustee asserts that the legal analysis of insolvency for a preference under § 547 incorporates the same legal and factual analysis that would be used in determining a fraudulent transfer under bankruptcy and state law.[8]

The Court finds that based upon the *Tony Gullo Motors I* and *Gresham* decisions, Trustee's counsel has met their burden in demonstrating that the fees sought in this case were either attributable to prevailing claims or claims that were so intertwined between recoverable and non-recoverable claims that segregating the attorneys' fees is unnecessary. Moreover, the Court finds that the work performed with regard to the non-recoverable claims was directly linked to services provided for the recoverable claims. As such, segregation is not warranted here. Trustee has offered to reduce the amount of attorneys' fees by 20% as an alternative to further segregating his fees. For the reasons stated herein, the Court finds that such a reduction is unnecessary.

As such, Trustee seeks attorneys' fees of $481,372.50 and costs of $7,901.07. Per Zehr's objections, Zehr argues that Trustee's counsel's fees should be $165,191.50. The parties have stipulated to $7,901.07, which represents the amount of the costs. After the Trustee's voluntary reduction of fees, the Trustee seeks attorney's fees of $481,372.50. As such, Zehr disputes Trustee's attorneys' fees in the amount of $316,181.00.

Zehr also argued in the alternative that should the Court disallow fees on the basis of Trustee's counsel's failure to segregate, that the majority of counsel's time is not compensable. Zehr provided an exhaustive chart detailing the nature of his objections to Trustee's fees. (ECF No. 171-1). Zehr's objections are premised on four bases: (1) fees not related to Zehr individually

---

[8] Trustee's counsel reduced their attorney's fees by $5,145.00 after conferring with Zehr's counsel. Counsel reduced their fees based upon using a lower rate for some work and duplication of attorney time.

should not be allowed; (2) time entries that are vague should not be compensable; (3) duplicate billing and interoffice conference between attorneys should be reduced; and (4) excessive billing on certain tasks that are unnecessary or tasks that should be done by a paralegal. Moreover, Zehr contends that the fees are generally excessive because: (1) the Trustee's adversary was pending for only approximately two years; (2) there were only four defendants in this chapter 7 adversary; (3) there were only three depositions taken and one of those did not involve Dr. Zehr; and (4) this non-jury trial spanned approximately four days in total. Zehr argues that Trustee's counsel's time entries show that seven different timekeepers billed time to this matter, many of whom did not do independent work and only attended a deposition or trial to observe. In addition to duplicative time entries by multiple attorneys, Dr. Zehr also objects to the Trustee's request for fees because Trustee in most cases did not did not exercise billing judgment.

The Trustee's Reply in turn provides direct responses to Zehr's line item objections to Trustee counsel's fees. (ECF No. 173-1). In most cases, Trustee's counsel provides a direct explanation for why the fees are compensable. There are limited entries in which the Trustee did not respond. The Trustee's counsel's exhibit containing their responses to Zehr's objections is 331 pages long.

Zehr's Objection does not raise any issues regarding counsel's competency or hourly rate. Further, the Objection does not argue that the fees were not actually incurred. A careful review of Zehr's Objection does not indicate what factors under ***Arthur Andersen & Co. v. Perry Equip. Corp.***, 945 S.W.2d 812, 818 (Tex. 1997) Trustee's counsel fees would not be allowed other than the time expended on certain entries and the necessity of the services. Natalie Wilson's Affidavit in support of Trustee counsel's fees explains how the ***Arthur Andersen*** factors are met in this case. The Court finds that the Wilson Affidavit and the arguments in the Trustee's Motion satisfy the

16

elements for an allowance of fees under TUFTA. As such, the Court only need to conduct a line-item-by-line-item analysis of the disputed fees to determine if the fees were excessive. The Court finds there are certain categories of fees in which the number of hours charged or the services rendered require further reduction.

The Court conducted its analysis of the disputed fees by examining those fees in which the Trustee did not respond to Zehr's Objections and those fees in which the Trustee did. The Court notes that there are $800.00 in fees for time entries in which Trustee failed to respond and the time entries are vague and nondescript. Those fees are disallowed. Also, the Court notes there is attorney time in the amount of $1,100.00 for work that could have been conducted by a paralegal. The amount of fees for that work is reduced by $700.00. As such, the deduction of $1,200.00 is appropriate in this category.

The Court further finds that in reviewing the time entries, Zehr's Objection, and the Trustee's Reply, that further reductions should be made as follows. Attorney time for collecting and examining exhibits was charged that could have been performed by a paralegal. That time is reduced from $1,170.00 to $400.00. The Court finds that the some of the time charged for preparing the amended complaint is excessive given that the amended complaint was not significantly different than the original complaint, yet it took approximately $5,000.00 in time to prepare the amended complaint. Those fees are reduced by $2,000.00.

Trustee's counsel charged roughly 100 hours to prepare the pre-trial order in this matter, which does not include all the time for preparing the proposed findings of facts and conclusions of law. The Court is cognizant of how detailed the pre-trial order was; including citations to the record and citations to the law. The pre-trial order was comprehensive and assisted the Court in trying this matter and preparing its memorandum opinion. Notwithstanding these considerations,

the Court finds that the amount of time charged for preparing a pre-trial order was inordinate in this context. The Court finds that this task should not have taken as much time (over two-40 hour weeks) and reduces the fees by $7,500.00. Zehr also argues that 166.5 hours in drafting a response to Zehr's Rule 52(c) motion is excessive. While the Court notes that the Response was well written and authoritative, and guided the Court in its decision-making process, the number of hours charged is likewise inordinate. The Court will reduce the hours in half to 83 hours with a hourly charge of $350.00/hour, thereby reducing the fees by $29,225.00. Finally, Zehr complains that there was duplication of services for certain tasks, such as reviewing depositions and a Rule 2004 examination. The Court agrees that there was duplication of time and reduces the time by $1,000.00. In sum, the Court will reduce the Trustee counsel's fees by $41,695.00. The Court finds Zehr's remaining objections were sufficiently rebutted by Trustee and are denied.

Finally, Trustee requests conditional attorneys' fees for an appeal in this matter. Trustee asks that additional award attorneys' fees of $25,000 if Zehr unsuccessfully appeals the Judgment to the United States District Court and an award of attorneys' fees of $25,000 if Zehr unsuccessfully appeals to the Court of Appeals for the Fifth Circuit. Trustee argues that The requests for conditional appellate fees of $25,000 at each appellate level correlates to compensation for approximately 70–75 hours of work at either Ms. Wilson's or Ms. Murray's current hourly rate. Trustee's counsel posits that this estimate of the fees that would be incurred on appeal is conservative, especially if either appellate court sets the matter for oral argument.

When considering matters that fall under particular state statutes, a trial court presented with evidence supporting the award of reasonable appellate fees may or must conditionally award such fees. Texas allows "loser-pays" fee shifting when explicitly provided for by the parties'

contract or when allowed by statute, but courts will award only those fees that are reasonable and necessary. *Sterling*, 822 S.W.2d at 10.

For example, the Civil Practice and Remedies Code (the "CPRC") allows a party who prevails on certain underlying claims and who recovers damages to also recover reasonable attorney's fees. Tex. Civ. Prac. & Rem. Code §§ 38.001 to .002. Chapter 38 is to be "liberally construed to promote its underlying purposes." *Id.* § 38.005. Statutes such as section 38.001 (with "may recover fees" language) are not discretionary; if there is evidence for reasonable attorney's fees, the award is mandatory. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). Under section 38.001 and other statutes with mandatory language, reasonable appellate attorney's fees must be awarded if there is evidence presented to the trial court to support the fees. *Exxon Mobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 421 (5th Cir. 2017); *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015), *reh'g denied* (Sept. 11, 2015) (finding that appellate attorney's fees under section 38.001 are mandatory when proof of reasonable fees is presented); *see also Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (per curiam) (remanding and directing the trial court to retry appellate attorney's fees where there was evidence to support an award).

Other statutes, including the Declaratory Judgments Act (the "DJA") and the Deceptive Trade Practices Act (the "DTPA"), also contain fee-shifting provisions with different standards. The DJA award is discretionary and comes with four limitations: the fees must be reasonable and necessary, and the award must be equitable and just. *Bocquet*, 972 S.W.2d at 20–21. State courts may award attorney's fees for trial and for a conditional appeal. *Id.* at 21–22 (finding that awarding conditional appellate attorney's fees was not unjust or inequitable as a matter of law, and remanding to the lower court to determine the reasonableness of the amount requested). Similarly, the DTPA allows for the discretionary award of conditional appellate attorney's fees. *See Hous.*

*Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 586 (Tex. App.—Austin 2003, no pet.) (holding that a trial court may award appellate attorney's fees as long as the award is conditional).

Section 24.013 of TUFTA states that a court may award costs and reasonable attorney's fees as are equitable and just. The Court finds that under applicable Texas law, it has the discretion to conditionally award appellate fees in this case based upon Trustee counsel's request. The Court notes that Zehr filed an Amended Notice of Appeal of the Court's Amended Final Judgment on August 9, 2018 (ECF No. 196). Thus, as of the date of this Order, there is no question that the Trustee will be expending time and effort in an appeal's process. Further, the Court finds that appellate fees of $25,000.00 for an appeal to the district court and $25,000.00 for an appeal to the Fifth Circuit are fair and equitable based upon counsel's affidavit that it would take approximately 75 hours to defend an appeal at both appellate levels.

## CONCLUSION

For the reasons stated herein, the Court finds that Trustee's Motion is **GRANTED IN PART AND** denied in part, and that Trustee is awarded fees in the amount of $439,677.50 and costs of $7,901.07. In addition, the Court will conditionally award Trustee appellate fees of $25,000.00 for an appeal to the district court and $25,000.00 for an appeal to the Fifth Circuit should the Court's judgment be appealed and the Trustee prevail at each appellate level.

All other relief not expressly granted is **DENIED**.

So **ORDERED**.

###